UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
GREGORY ERICKSON

                        Plaintiff,

                                                 Case No.:

   vs.

CENLAR, FSB,

                       Defendants.
----------------------------------------------------------x

## COMPLAINT

Plaintiff, GREGORY ERICKSON ("Plaintiff"), brings suit against Defendants CENLAR, FSB ("Defendant") as follows:

## INTRODUCTION

1.      This is a lawsuit brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the New York Deceptive Acts and Practices Act (NYDAP) NY Gen Bus Law § 349 *et seq* and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      This action arises out of Defendant's illegal efforts to collect consumer debts. Specifically, CENLAR, FSB regularly attempt to collect debts previously discharged by order of a Federal bankruptcy court. As Judge Posner stated: "Dunning people for their discharged debts would undermine the 'fresh start' rationale of bankruptcy and is prohibited by the [FDCPA] which … prohibits a debt collector from making a 'false representation of the character, amount, or legal status of any debt.'"[1]

---
[1] *Ross v. RJM Acquisitions Funding L.L.C.*, 480 F.3d 493, 495 (7th Cir. 2007).

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331(b), 15 U.S.C. § 1692k, and 28 U.S.C. § 1334(b).

4. Venue is appropriate under 28 U.S.C. § 1391 since the conduct complained of relates to real property situate in this District.

## PARTIES

5. Plaintiff, GREGORY ERICKSON, is a natural person and a resident of Wake County, North Carolina and the subject matter of this action is real property located in Suffolk County, New York.

6. Defendant, CENLAR, FSB, is a corporation doing business in Suffolk County, New York. Upon information and belief, Defendant is a registered debt collector.

## FACTUAL ALLEGATIONS

7. On or about December 5, 2006, Plaintiff obtained a purchase money mortgage from ABN AMRO Mortgage Group, Inc. to acquire his home at 8 Sheridan Road, Babylon, NY 11702 ("the Loan"). The Loan was for personal, family, or household purposes and it is therefore a "debt" as that term is defined under the FDCPA at 15 U.S.C. § 1692a(5).

8. On or about May 29, 2014, Plaintiff filed a voluntary Chapter 7 petition in U.S. Bankruptcy Court, Middle District of North Carolina. *In re Gregory James Erickson*, Case No.: 14-10599.

9. On or about March 19, 2015, Plaintiff converted his petition from seeking relief under Chapter 7 to Chapter 13. In accordance with 11 U.S.C. § 1328(a), the mortgage debt was provided for in the Chapter 13 plan.

10. On or about May 12, 2016, the Plaintiff received a Chapter 13 discharge. See **Exhibit "A"**.

11. Pursuant to the Chapter 13 bankruptcy discharge order, Plaintiff was fully released from any and all personal monetary liabilities on the subject loan.

12. Upon information and belief, on or about June 14, 2019, CENLAR, FSB, as loan servicer for plaintiff Citimortgage, Inc., referred the mortgage to counsel to commence foreclosure proceedings against the Plaintiff, alleging a 2010 loan default. **Exhibit "B"**.

13. Despite knowledge and actual notice that the debt is no longer valid by virtue of Plaintiff's 2016 Chapter 13 discharge, CENLAR, FSB, continues to attempt to collect on this debt by sending monthly statements demanding payment for an amount in excess of $546,000.00. **Exhibit "C"**. The statements constitute an effort to collect a debt and reference *"Total Amount Due," "Overdue Payment," "Due By," and "You are late on your mortgage payments."*

14. Upon information and belief, CENLAR, FSB, has only serviced this debt at a time when it was past due.

15. Moreover, the statements contain payment instructions, a payment amount, a payment deadline, and reflect new and additional charges being added to the demanded total balance. For example, Plaintiff's June 1, 2020 Statement reflects $976.37 in new fees charged on May 8, 2020, and demands that Plaintiff is to pay $546,964.27 immediately.

16. Despite receiving a bankruptcy discharge in May 2016, Plaintiff has received from CENLAR, FSB, account statements and other correspondence every month since CENLAR, FSB, acquired the rights to service the loan at issue.

17. CENLAR, FSB, has no legal right to collect or attempt to collect any amount from the Plaintiff.

18. Furthermore, despite Plaintiff's 2016 Chapter 13 Discharge, CENLAR, FSB, continues to misrepresent the status of the mortgage in its reporting to credit bureaus, needlessly damaging the Plaintiff's credit worthiness and credit score and denying the Plaintiff access to credit and an opportunity to refinance the mortgage on his current residence.

19. Upon information and belief, CENLAR, FSB, developed and regularly employs a business model and computer-software platform whereby CENLAR, FSB, tracks when consumers are discharged from their debts through Bankruptcy. Despite this information, CENLAR, FSB, systematically seeks monetary recovery on discharged amounts from borrowers who received bankruptcy discharges on the promissory notes and mortgage loans.

20. Upon information and belief, CENLAR, FSB, intentionally and systematically sends such borrowers correspondence demanding payment of amounts discharged in bankruptcy, including but not limited to periodic account statements containing payment demands and detachable payment coupons in an effort to seek monetary recoveries on discharged debts.

21. CENLAR, FSB, routinely uses form "Account Statements" similar to Exhibit C when attempting to collect on these discharged debts. CENLAR, FSB, uses the same form "Account Statements" in connection with its collection efforts in hundreds if not thousands of instances.

## COUNT I - VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 *et seq.* ("FDCPA")

22. Plaintiff re-alleges and incorporates paragraphs 1 through 21 as if fully set forth herein.

23. This is an action seeking relief for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Specifically, by attempting to collect debts previously discharged in bankruptcy, CENLAR, FSB has violated the FDCPA.

24. The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in unfair and/or deceptive practices during the collection of a debt.

25. At all times material herein, Plaintiff was and is a "consumer" as defined by 15 U.S.C. § 1692a(3) since he is a natural person allegedly obligated to pay a consumer debt.

26. At all material times herein, Plaintiff's debt was a consumer "debt" as defined by 15 U.S.C. 1692a(5), since it was an obligation of a consumer to pay money arising out of a transaction in which the money and property which were the subject of the transaction were primarily for personal, family, or household purposes.

27. At all times material herein, Defendant was and is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6), since the debt at issue was in default at the time CENLAR, FSB acquired and/or began servicing them.

28. The numerous "Account Statements" sent from CENLAR, FSB, to Plaintiff were "communications" as that term is defined by 15 U.S.C. § 1692a(2), since they were mediums used to directly convey information on a debt.

29. Plaintiff filed a voluntary Chapter 7 bankruptcy petition on or about May 29, 2014, which was subsequently converted to a Chapter 13 petition on March 19, 2015. In accordance with 11 U.S.C. § 1328(a), the mortgage debt was provided for in the Chapter 13 plan.

30. On May 12, 2016, the Plaintiff received a Chapter 13 bankruptcy discharge.

31. At all material times herein, Defendant knew or should have known that the debt it was attempting to, or did collect from the Plaintiff, had been discharged.

32. In accordance with Plaintiff's Chapter 13 bankruptcy discharge, Plaintiff was fully released from any and all personal monetary liabilities on the subject loan.

33. Despite actual notice that the debt was no longer valid, CENLAR, FSB, continues to dun the Plaintiff and send monthly "Account Statements" for an amount in excess of $546,000.00.

34. The Account Statements constitute an effort to collect a debt and reference, *"Mortgage Statement," "Total Amount Due," "Overdue Payment," "Due By," and "You are late on your mortgage payments."*

35. Moreover, the "Account Statements" contain payment instructions, a payment amount, a payment deadline, and a tear-away payment coupon. For example, Plaintiff's June 1, 2020 Account Statement represents that Plaintiff is required to pay $546,964.27 immediately, which shows CENLAR, FSB clearly contemplated payment from Plaintiff.

36. At the time CENLAR, FSB sent the abovementioned "Account Statements" to Plaintiff, all monetary amounts owed by Plaintiff had been discharged by bankruptcy proceedings and were no longer due and owing.

37. By sending "Account Statements" to Plaintiff, CENLAR, FSB attempted to collect a debt and represented that it had a legal right to collect upon discharged monetary amounts. CENLAR, FSB's, conduct violates 15 U.S.C. § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt.

38. In addition, CENLAR, FSB's, abovementioned collection activities falsely represented/represent the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A).

39. As a direct and proximate result of CENLAR, FSB'S, FDCPA violations, Plaintiff has been harmed. Plaintiff is entitled to actual damages, statutory damages under 15 U.S.C. § 1692k(a)(2)(B) and attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1692k(a)(3).

40. For purpose of the claims brought in this action, the applicable standard under the FDCPA is "the least sophisticated" consumer test. *See* Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985).

41. Plaintiff retained the undersigned attorneys for the purposes of pursuing this matter against CENLAR, FSB, and is obligated to pay his attorneys a reasonable fee for services.

42. Because Defendants' actions were intentional, willful and/or without regard for Plaintiff's rights, Plaintiff reserves the right to seek punitive damages upon the showing on the records of evidence sufficient to form the basis of a claim for punitive damages.

## COUNT II – RELIEF REQUESTED UNDER THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

43. Plaintiff re-alleges and incorporates paragraphs 1 through 42 as if fully set forth herein.

44. The Declaratory Judgment Act, 28 U.S.C. § 2201, offers a unique mechanism by which a party may seek to remedy ongoing violations of statutory provisions and to prevent ongoing harm in form of declaratory and injunctive relief.

45. Specifically, the Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. 28 U.S.C. § 2201.

46. Pursuant to 28 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein, and to adjudicate the dispute between the parties herein.

47. Plaintiff filed a voluntary Chapter 7 bankruptcy petition on or about May 29, 2014 which was subsequently converted to a Chapter 13 petition on March 19, 2015. In accordance with 11 U.S.C. § 1328(a), the mortgage debt was provided for in the Chapter 13 plan.

48. On May 12, 2016, the Plaintiff received a Chapter 13 bankruptcy discharge.

49. At all material times herein, Defendant knew or should have known that the debt it was attempting to or did collect, from the Plaintiff had been discharged.

50. In accordance with Plaintiff's Chapter 13 bankruptcy discharge, Plaintiff was fully released from any and all personal monetary liabilities on the subject loan.

51. Despite actual notice that the debt was no longer valid, CENLAR, FSB, continues to send the Plaintiff monthly "Account Statements" for an amount in excess of $546,000.00. (Plaintiff's June 2020 Account Statement is attached as Exhibit C). The Account Statements constitute an effort to collect a debt and reference, *"Mortgage Statement," "Total Amount Due," "Overdue Payment," "Due By," and "You are late on your mortgage payments*."

52. Moreover, the "Account Statements" contain payment instructions, a payment amount, a payment deadline, and a tear-away payment coupon. For example, Plaintiff's June 1,

2020 Account Statement represents that Plaintiffs are to pay $546,964.27 immediately, which shows CENLAR, FSB, clearly contemplated payment from Plaintiffs.

53. At the time CENLAR, FSB, sent the abovementioned "Account Statements" to Plaintiff, all monetary amounts owed by Plaintiff had been discharged by bankruptcy proceedings and were no longer due and owing.

54. Upon information and belief, CENLAR, FSB, routinely sends account statements to consumers attempting to collect monetary amounts that have been discharged in bankruptcy.

55. However, CENLAR, FSB, had no legal right to seek collection of these amounts from Plaintiff and was in fact enjoined from doing so pursuant to bankruptcy discharge of the subject amounts.

56. CENLAR, FSB's, conduct as described herein should be declared to be unlawful.

57. CENLAR, FSB, should be enjoined from sending "Account Statements" requesting payments for debts previously discharged in bankruptcy.

58. CENLAR, FSB, should be forced to disgorge all ill-gotten gains collected from consumers as a result of its unlawful conduct.

### COUNT III – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *et seq.* ("FCRA")

59. Plaintiff re-alleges and incorporates paragraphs 1 through 58 as if fully set forth herein.

60. The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* protects consumers from the willful and negligent furnishing of false and inaccurate information to the Consumer Reporting Agencies.

61. Specifically, FCRA § 1681s-2(a) states:

(a) Duty of Furnishers of Information to Provide Accurate Information

9

   (1) Prohibition

    (A) Reporting Information With Actual Knowledge of Errors
    A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

    (B) Reporting information after notice and confirmation of errors
    A person shall not furnish information relating a consumer to any consumer reporting agency if –
    (i) The person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate, and
    (ii) The information is, in fact, inaccurate.

62. Moreover, under FRCA § 1681s-2(b), upon receiving notice of a dispute with regards to the accuracy of information, the FCRA imposed upon furnishers, which the Defendant herein is, the duty to investigate the dispute, report results of the investigation to consumer reporting agencies, and to correct, modify, delete and permanently block the reporting of that item of false information.

63. Despite clear an unequivocal notice that the Loan has been adjudicated discharged in Federal Bankruptcy Court, CENLAR, FSB, continues to furnish the false and misleading information to the credit reporting agencies that Plaintiff's Loan is currently due and in delinquency.

64. The Plaintiff has disputed this erroneous information in his credit report to the credit reporting agencies and has formally informed CENLAR, FSB of his dispute through written correspondence to its legal counsel. A copy of this correspondence and its enclosures is annexed hereto as **Exhibit "D"**.

65. Upon information and belief, despite receiving notice of Plaintiff's dispute to the accuracy of the information being reported, CENLAR, FSB, has failed to conduct an investigation

with respect to the disputed information and has failed to comply with its other duties under the FCRA.

66. The source of this information and belief is the fact that to date, CENLAR, FSB, has failed to correct its mistakes or to report the results of the mandatory investigation to the consumer reporting agencies, as well as its failure to even acknowledge or respond to Plaintiff's dispute.

67. This is despite the fact that Citimortgage, Inc., the plaintiff in the foreclosure action and for whom CENLAR, FSB, works as the loan servicer, is *correctly* reporting the loan status as "Discharged in Bankruptcy".

68. This obvious discrepancy between the two entities who are supposed to have matching, or at least corresponding borrower information, is evidence that an error exists in CENLAR, FSB's records.

69. Moreover, upon information and belief, the credit reporting agency has notified the Defendant about the disputed information.

70. Nevertheless, CENLAR, FSB, continues to act in willful or negligent compliance with the FCRA by failing to conduct a reasonable investigation of the dispute and correct and/or update its inaccurate and misleading reporting.

71. As a result, the Plaintiff has been denied loan applications to finance consumer purchases and to refinance his mortgage due to CENLAR, FSB's, negative reporting of false information to the credit bureaus.

72. Consequently, the Defendant is liable to Plaintiff for its willful and/or negligent noncompliance with the FCRA in an amount to be determined by the Court but no less than $1,000 and the amount of actual damages sustained by the Plaintiff as a result of its malfeasance.

73. The Plaintiff is also entitled to attorney's fees pursuant to FCRA §§ 1681(n) & 1681(o) upon the finding by the Court that the Plaintiff has successfully proven his action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter an Order:

a. Adjudging that Defendant violated the FDCPA sections enumerated above, and awarding Plaintiff actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b. Declaring that Defendant's attempts to collect debts previously discharged in bankruptcy are unlawful;

c. Adjudging that Defendant violated the FCRA by willfully and/or negligently failing to comply with its provisions, and awarding Plaintiff actual, statutory, and punitive damages pursuant to 15 U.S.C. § 1681 *et seq.*

d. Enjoining Defendant from sending Account Statements similar to those attached as Exhibit C in the manner described in this lawsuit;

e. Ordering disgorgement of all ill-gotten sums collected in violation law;

f. Awarding Plaintiff reasonable attorney's fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

g. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

h. Awarding such other and further relief as the Court may deem just and proper.

## RESERVATION OF RIGHTS

The Plaintiff expressly reserves his ability to exercise any right with respect to the subject matter of this Complaint, including the right to lawfully seek joinder of parties or to convert this

Complaint into a class-action lawsuit. Plaintiff also expressly reserves the right to supplement this pleading with any claims which may become known during the pendency of this suit.

## JURY TRIAL DEMAND

Plaintiff demands jury trial on all issues so triable.

Dated: February 9, 2021                    LAW OFFICE OF CHRISTOPHER THOMPSON

*Stefanie Charles, Esq.*
Of Counsel
*Attorneys for Plaintiff*
33 Davison Lane East
West Islip, NY 11795
631-983-8830
ctalawman@aol.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREGORY ERICKSON,<br><br>                             Plaintiff(s),<br>-Against-<br><br>CENLAR, FSB,<br><br>                             Defendant(s). | Docket No.: |

### *COMPLAINT*

LAW OFFICE OF CHRISTOPHER THOMPSON

*Stefanie Charles, Esq.*
Of Counsel
*Attorneys for Plaintiff*
33 Davison Lane East
West Islip, New York 11795
(631) 983-8830

---

*To:*
*Attorney(s) for:*

---

*Service of the copy of the within _____ is hereby admitted.*
*Dated:*                     _____

                                                            *Attorneys for*

---